IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA: | CASE NO. 21-CR- |
| v. | DEFENDANT BOURNES SENTENCING MEMORANDUM AND SUPPORTING DOCUMENTS |
| PATRICK BOURNES, Defendant | HONORABLE UNITED STATES DISTRICT JUDGE |

## INTRODUCTION

Defendant Patrick Bournes respectfully submits the following Sentencing Memorandum to assist the Court in determining a proper sentence for his conduct.

Having fully reviewed the PSR and the Probation Sentencing Recommendation, Mr. Bournes concurs with the recommendation of the Probation Department/Officer. In short Mr. Bournes requests that the Court sentence him to 36 months of probation with 8 months (240 days) of Location Monitoring.[1] He also requests that he be allowed to serve that 8-month period in Arlington Virginia at the home of his elderly mother so that he is able to continue her ongoing care. He currently lives in California but currently spends most of his time in Arlington attending to her medical and daily needs.

At the outset we wish to acknowledge the Courts time and experience by avoiding traditional boilerplate language to which the Court has seen all too often. In place we choose to present the most relevant facts and note the law when needed in footnotes in the hope that this

---

[1] Document 197 – Sentencing Recommendation of Chief United States Probation Officer Brian D. Schaffer, by Aidee V. Gavioto, approved by Kelli Willett.

1

will assist the Court to best find the appropriate sentence for Mr. Bournes.

Our request for a probationary sentence is based upon the following relevant factors which coincide with 3553 factors:

1. Mr. Bournes took immediate and honest responsibility for his actions.
3. Mr. Bournes's background and personal history.
4. Mr. Bournes's took and completed United States Citizenship classes as a reminder of the great blessing it is to be an American Citizen.
5. The unlikelihood Mr. Bournes will reoffend.
6. Mr. Bourne's role in the matter before the Court which he submits is akin to aberrant behavior.

Our singular dispute with Probation is that Mr. Bournes does not need to do regular drug testing. He has no substance issues, never has, and is willing to do random tests until probation is satisfied this is not an issue.

In summary it is all too common for Defense Attorneys and Prosecutors to exaggerate their recommendation, down or up, Mr. Bournes submits a probationary sentence is a responsible request and not hyperbole given his specific circumstances and the recommendation of Probation.

## GUIDELINES

Mr. Bournes agrees that his guideline level is an 11. This falls into Zone B with a guideline range of 8 – 14 months. He has no criminal history. Mr. Bournes submits that the Court may consider his actions as aberrant behavior in concluding that a probationary sentence is appropriate.

## FOUNDATIONAL FACTORS

The following 10 foundational factors make up the basis for our position.

1. Mr. Bournes has no criminal history or background.
2. There is no indication nor evidence that Mr. Bournes was making negative comments

2

    about the election or the events of January 6th prior to or after the events in question on any type of public platform such as Facebook or Twitter.

3. Mr. Bournes came to Washington alone to hear the President speak. He did not meet up with anyone nor was he part of any protesting group.
4. These is no evidence or indication that he came with any violent or disruptive intent other than his act in the Tunnel.
5. Since his January 6th Mr. Bournes sought deeper insight and rehabilitation by participating in Citizenship Classes and American Civics Classes to remind him of the true value of being an American.
6. Mr. Bournes has completed extensive hours of Community Service by working with military veterans.
7. The fair presentation of his character in attached letters of recommendation.
8. His acts of Mr. Bourne's on January 6th will be briefly noted to place them in his personal context.
9. Mr. Bourne's is the full-time caregiver to his elderly mother who requires his near full-time assistance.

## A BRIEF DISCUSSION OF THE DAY

Mr. Bournes chooses not to restate the facts of the case here which are well known by this Court. Your Honor has just completed a lengthy Jury Trial which we understand included the time period that Mr. Bournes was in the Tunnel. While he may not have been pointed out to the Court during the trial of others his actions are well documented in the Plea Agreement and the PSR.

As a preamble to the following paragraphs, Mr. Bournes wishes to remind the Court that he is not seeking to minimize his conduct but rather that it be correctly classified. There is no desire to downplay his failure to abide with the law on January 6th. However, there is a place for a discussion of that failure within the guidelines and recommendations of the Sentencing Commission. The following is an attempt to do so without making any excuses for his mistake.

Mr. Bournes arrived at Washington D.C. the morning of the January 6th to hear the President speak. After President Trump's speech Mr. Bournes wandered around the Mall for

several hours by himself. Around 2:45 P.M. Mr. Bournes walked up with the bulk of the afternoon crowd towards the Capital Building. He approached the terrace area around 2:50 P.M. and then walked up to the Tunnel where there were people waiving others inside. He entered the tunnel around 3:03 and left around 3:11. Once inside the Tunnel he lingered near the entrance for about 4 minutes. In the following minutes he joined the scrum of people that pressed against the police line in the middle of that group. At one point he did yell "Traitors" and passed a Police Shield backward as it came over head. His total time of 8 minutes in the Tunnel is his entire footprint of his January 6th activities.

     Mr. Bournes did not come with any group. There are no social media political rants made by him prior to or after his actions on January 6th. He did not boast of his acts nor present ideas about what occurred that day on any platform as was done by so many others. He traveled alone to Washington D.C. and there is no indication he had any sinister or other such plans. Mr. Bournes may have been charged with other individual in this Indictment, but he did not know those individuals at any time before or after January 6th. What they have in common is they were in the same place at the same time, nothing more.

     Mr. Bournes has admitted to his failure to act accordingly in the Tunnel. As a 60-year-old man he understands the responsibility of age. Our responsibility is to be the adult in the room when others act the fool. We are to lead by example with wisdom and care. He understands that with the life well lived comes the responsibility to set good examples. His entire life has been that of service, correctness, and one who has remained in the straight and narrow of both the letter and the spirit of the law.

     Yet for those few moments on January 6th he allowed himself to be caught in that specific moment in emotional chaos. There in the Tunnel with the exuberance of the crowd and the frustrations of the moment he joined in the acts of Civil Disorder. He is not speaking of the psychological principle of "Mob Mentality." He does not attribute his act to the people around him nor should this Court take from his position such an excuse. But there in the Tunnel, in that moment, he allowed his frustration to leak out in an improper fashion. But no sooner had he expressed that frustration that he voluntarily turned and left the Tunnel. There was no sustained pushing or disorderly conduct beyond what is established. He joined in the push for a few minutes and then turned and left. His lapse is akin to what the Sentencing Guidelines refers to as

"Aberrant Behavior."[2]

In determining the sentence of Mr. Bournes, the Court might look to the Sentencing Commissions' position on aberrant behavior. Herein the Commission suggests that a below guideline (or probationary sentence as requested by Mr. Bournes) may be warranted in certain cases. In determining whether the Court should depart on the basis of aberrant behavior, the Court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense."

There in the Tunnel Mr. Bournes committed his singular criminal occurrence. This is set forth in the PSR on lines 35 and 36. His was a short-lived act of around 8 minutes which he then stopped and retreated from of his own volition. While he did plan to come to Washington there is no indication, that he planned to enter the Capital/Tunnel nor commit acts of Civil Disorder prior to his arrival at the Tunnel. His act of Civil Disorder was spontaneous and born of the moment.[3]

---

[2] "§5K2.20. Aberrant Behavior: A sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior. However, the court may not depart below the guideline range on this basis if (1) the offense involved serious bodily injury or death; (2) the defendant discharged a firearm or otherwise used a firearm or a dangerous weapon; (3) the instant offense of conviction is a serious drug trafficking offense; (4) the defendant has more than one criminal history point, as determined under Chapter Four (Criminal History and Criminal Livelihood); or (5) the defendant has a prior federal, or state, felony conviction, regardless of whether the conviction is countable under Chapter Four.

[3] The amendment responding to question of Aberrant Behavior was in response to "a circuit conflict regarding whether, for purposes of downward departure from the guideline range, a "single act of aberrant behavior" (Chapter One, Part A, Subpart 4(d)) includes multiple acts occurring over a period of time. Compare United States v. Grandmaison, 77 F.3d 555 (1st Cir. 1996) (Sentencing Commission **intended the word "single" to refer to the crime committed; therefore, "single acts of aberrant behavior" include multiple acts leading up to the commission of the crime; the district court should review the totality of circumstances**); Zecevic v. United States Parole Commission, 163 F.3d 731 (2d Cir. 1998) (**aberrant behavior is conduct which constitutes a short-lived departure from an otherwise law-abiding life**, and the best test is the totality of the circumstances); United States v. Takai, 941 F.2d 738 (9th Cir. 1991) (**"single act" refers to the particular action that is criminal, even though a whole series of acts lead up to the commission of the crime**); United States v. Pena, 930 F.2d 1486 (10th Cir. 1991) (aberrational nature of the defendant's conduct and other circumstances justified departure), with United States v. Marcello, 13 F.3d 752 (3d Cir. 1994) (**single act of aberrant behavior requires a spontaneous, thoughtless, single act involving lack of planning**); United States v. Glick, 946 F.2d 335 (4th Cir. 1991) (conduct over a ten-week period involving a number of actions and extensive planning was not "single act of aberrant behavior"); United States v. Williams, 974 F.2d 25 (5th Cir. 1992) (**a single act of aberrant behavior is generally spontaneous or thoughtless**); United States

## CITIZNESHIP CLASS AND COMMUNITY SERVICE

One thing that seems to have been forgotten these days is that we are Americans first, and not political parties. To reconnect with his citizenship Mr. Bournes enrolled in and completed the civic course which immigrants seeking naturalization must take. He also took several other civics classes. There he was reminded that America may have political parties but it is our citizenship as Americans first and foremost which should be prized above all.

One of the most basic and essential elements of being an American is that we cherish the peaceful transfer of power. Whether it is the local City Counsel or the White House, power must be abandoned for the newly elected. In his classes Mr. Bounes was reminded of this most critical function of citizenship. If one disputes an election, then we turn to the wisdom and independence of our Courts who review real evidence and seek to ensure fair play. These classes were a reminder of our Constitutional principles.

Mr. Bounres has also sought to make amends by volunteering with the American Corporate Partners (ACP). Mr. Bournes worked directly with many people who needed counsel and advice on dealing with their transition from the military to civilian life. From early 2022 to this year, he volunteered many hours each month. At a minimum he estimates around 100 plus hours, but he admits that after a short period it became such a gift in his life to serve others that he stopped counting his hours. Counsel for Mr. Bournes still felt the Court should know that his service has been extensive and ongoing and will continue.

## LETTERS OF REFERENCE

It is customary to include letters of references to assist the Court in evaluating the individual. But what good are these letters if they do not come from well informed citizens.

---

v. Carey, 895 F.2d 318 (7th Cir. 1990) (single act of aberrant behavior contemplates a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning); United States v. Garlich, 951 F.2d 161 (8th Cir. 1991) (fraud spanning one year and several transactions was not a "single act of aberrant behavior"); United States v. Withrow, 85 F.3d 527 (11th Cir. 1996) (a single act of aberrant behavior is not established unless the defendant is a first-time offender and the crime was a thoughtless act rather than one that was the result of substantial planning); United States v. Dyce, 78 F.3d 610 (D.C. Cir.), amd. on reh. 91 F.3d 1462 (D.C. Cir. 1996) (same)."

Each of Mr. Bournes letters comes from individuals that were well informed of his activities on January 6th and knew of his acceptance of responsibility.

## OTHER CONSEQUENCES

A felony conviction indeed follows an individual for the rest of their lives. This is also a type of punishment. But in the case of Mr. Bournes one critical consequence is
he is now on the Domestic Terrorist TSA watch list. For the rest of his life any and all travel will require at least four additional hours of stoppage and interviews at airports. This has been his situations for the last several years as he traveled to attend to his parents. This too is a form of punishment that the Court may consider.

## MR. BOURNES ATTENDS TO HIS ELDERLY MOTHER FULL TIME

Since the death of his father in February of 2023 Mr. Bournes has been the primary caregiver to his 86 year old mother. Mr. Bournes is responsible for scheduling doctor appointments, taking his mother to the emergency room (which has occurred 5 times in the last 9 months), paying all domestic bills, keeping up with her medications, and attending to her needs.

Mr. Bournes also has the responsibilities to attend to her financial needs by managing her finances and the family trust. His duties include property management, general maintenance, plumbing, electrical work, vendor selection, tax preparation and bookkeeping. Maintaining his mother's estate and her health is nearly a full-time job which is only performed by Mr. Bournes.[4]

## REQUIREMENT TO WORK

The recommendation of the Probation Office is that Mr. Bournes be required to work 30 hours a week. Because of his age and this conviction, he decided that it was time to retire and has no plans to return to work. His full-time job is to take care of his mother. We would ask the Court to not make the Order to seek and maintain full time employment.

---

4  Mrs. Bournes does of course have proper medical care and treatment by medical personal. We are referencing to those daily needs that do not fall under that umbrella of medical services.

7

**CONCLUSION**

There is a certain degree of comfort that comes when you see that what you believe is a correct outcome is confirmed by an independent and neutral party. In this case Mr. Bournes submits that the Probation Officer's recommendation and his agreement with said recommendation is a correct assessment of his proper punishment. Accordingly, it is requested that the Court sentence Mr. Bournes to 36 months' probation with 8 months of location monitoring.

Dated June 14, 2024

        Respectfully Submitted,
        Law Offices of Dyke Huish

        _____
        Dyke E. Huish
        Law Offices of Dyke Huish